IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RICHARD LIVERMORE, Derivatively §
on Behalf of Nominal Defendant DEAN §
FOODS COMPANY §
 §
 Plaintiff, §
 § NO. 3-10-CV-0882-BD
VS. §
 §
GREGG L. ENGLES, ET AL. §
 §
 Defendants. §

## MEMORANDUM ORDER

In this shareholder derivative action, 11 current or former officers and directors of Dean Foods Company ("Dean Foods"), together with Diary Farmers of America, Inc. ("DFA"), National Dairy Holdings, L.P. ("NDH"), Southern Marketing Agency, Inc. ("SMA"), and Dairy Marketing Services, LLC ("DMS"), have filed a Rule 12(b)(6) motion to dismiss plaintiff's amended complaint alleging a conspiracy to manipulate prices for fluid Grade A milk products in violation of federal antitrust laws. Plaintiff amended his complaint after the court determined that he failed to plead particularized facts, as required by Rule 23.1 and Delaware law, to establish that demand on the Dean Foods board of directors would be futile. *See Livermore v. Engles*, No. 3-10-CV-0882-BD, 2010 WL 3583999 at *3 (N.D. Tex. Sept. 13, 2010). Rather than dismiss the case outright, the court allowed plaintiff to amend his complaint in an attempt to cure this pleading defect. *Id.*, 2010 WL 3583999 at *4. Plaintiff took advantage of that opportunity by filing an amended complaint with new allegations of demand futility. Defendants contend that plaintiff's current pleading suffers from the same deficiency as his original complaint -- it does not allege particularized facts to create a

reasonable doubt as to whether the actions of the individual defendants were a valid exercise of business judgment.[1] The issues have been fully briefed by the parties, and the motion is ripe for determination.

Rule 23.1, which governs shareholder derivative actions in federal court, provides that a complaint must state with particularity:

> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
>
> (B) the reasons for not obtaining the action or not making the effort.

FED. R. CIV. P. 23.1(b)(3). Where a plaintiff contends that demand on the directors would be futile, the complaint must allege particularized facts that create a reasonable doubt as to whether "(1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000); *see also Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993). Here, plaintiff argues that demand is excused under the second prong of the *Aronson* inquiry. (*See* Plf. Resp. at 10, 16, 17). Thus, the court's analysis is limited to determining whether the amended complaint alleges "particularized facts sufficient to raise [ ] a reason to doubt that the action was taken honestly and in good faith[.]" *In re J.P. Morgan Chase & Co. Shareholder Litig.*, 906 A.2d 808, 824 (Del. Ch. 2005), *aff'd*, 906 A.2d 766 (Del. 2006), *citing In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 286 (Del. Ch. 2003). The presumption that the board's actions were the product of a valid exercise of business judgment may

---

[1] Defendants also move for dismissal on the grounds that: (1) plaintiff has not adequately pled the timing of his stock ownership; and (2) his amended complaint is not properly verified. The court need not address these other grounds for dismissal as plaintiff has failed to adequately plead demand futility.

also be overcome in "rare cases" where the challenged transaction itself is "so egregious on its face that board approval cannot meet the test of business judgment[.]" *Aronson*, 473 A.2d at 815; *see also White v. Panic*, 793 A.2d 356, 367 (Del. Ch. 2000), *aff'd*, 783 A.2d 543 (Del. 2001) (noting that plaintiff who seeks to excuse demand through the second prong of *Aronson* faces "a heavy burden"); *Khanna v. McMinn*, No. 20545-NC, 2006 WL 1388744 at *23 (Del. Ch. May 9, 2006) ("[A] plaintiff will bear a difficult, but not insurmountable, burden in pleading particularized facts demonstrating demand futility under [the second] prong of *Aronson*.").

Like his original pleading, plaintiff's amended complaint asserts derivative claims arising from a number of business decisions made by the Dean Foods board of directors, including approval of a merger with Suiza Foods Corporation ("Suiza"), for the ostensible purpose of gaining control of a majority of fluid milk bottling plants in the Northeast and Southeast United States, thereby restricting the access of independent dairy farmers to bottling plants in those regions. (*See* Plf. Am. Compl. at 22-28, ¶¶ 58-76 & 31-37, ¶¶ 83-98).[2] Plaintiff alleges that demand on the Dean Foods board is excused because "the Board's decision to engage in an illegal antitrust conspiracy in the Southeast and Northeast milk markets was not, and could not possibly have been, the product of a good faith exercise of business judgment." (*See id.* at 40, ¶ 108). Specifically, the complaint alleges:

> Beginning with his time as a director of the board of Suiza, defendant Engles, has sought to violate the United States' antitrust laws in an effort to control the milk market. Even prior to the Merger, Suiza's board, including defendant Engles, and DFA were engaged in an antitrust conspiracy that included, among other things, collaborative agreements that forced independent farmers to DFA or DMS in order

---

[2] Plaintiff originally alleged an antitrust conspiracy involving attempts to manipulate the milk market in the Southeast United States, whereas his amended complaint expands the relevant geographic market to include the Northeast. (*Compare* Plf. Orig. Compl at 22, ¶¶ 66-68, *with* Plf. Am. Compl. at 17, ¶¶ 45-49). The amended complaint also drops a defendant, Ronald Kirk, and clarifies that plaintiff is challenging only the decision to merge with Suiza and other actions taken by the Dean Foods board of directors that resulted in limiting the access of independent diary farmers to affiliated bottling plants. (*Compare* Plf. Orig. Compl. at 56, ¶ 13 & 27-33, ¶¶ 84-98, *with* Plf. Am. Compl. at 4-7, ¶¶ 10-20 & 28-37, ¶¶ 76-98). In all other respects, the allegations in the two pleadings are essentially the same.

> for them to have access to bottling plants. This conspiracy was furthered by the merger of Suiza and Former Dean Foods, which was approved by the boards of each company, including defendant Engles, with the intent of continuing and furthering the antitrust conspiracy. Defendant Engles' decision to violate antitrust laws and the Company's Code of Ethics in connection with the antitrust conspiracy is a breach of his fiduciary duties. Defendant Engel [sic] and the Board have since continued to engage in illegal anti-competitive activities since the Merger by, among other things, (i) refusing to deal with independent dairy farmers in the Southeast and Northeast markets so that they are forced to join DMS in order to access Dean Foods' bottling plants; (ii) informing Maryland & Virginia Coop, a dairy farmer coop unaffiliated with DFA, that the Company would no longer accept any of the coop's milk unless the coop became a member of SMA; (iii) directing Dean Foods to rebuke, and refuse even to negotiate with, a newly formed cooperative of independent dairy farmers called U.S. Milk, citing the Company's full-supply agreements with DFA; and (iv) paying Stop & Shop to close down its bottling plant in Readville, MA, which eventually forced St. Albans to join DMS in order to obtain access to sufficient bottling capacity. All of these actions were taken at the direction of the Board and given their illegal nature are not the product of a good faith business judgment. Accordingly, demand on the Board is futile.

(*Id.* at 40-41, ¶ 109). The amended complaint goes on to repeat these allegations – word for word – as to each of the 10 other members of the Dean Foods board of directors who are named as defendants in this suit. (*See id.* at 41-46, ¶¶ 110-115). The only change from one paragraph to the next is the name of the defendant and that one board member, Janet Hill, served as a director of the former Dean Foods Corporation, rather than Suiza, prior to the Dean Foods-Suiza merger. (*See id.* at 46, ¶ 116). As this court held in its prior opinion, "[s]uch 'group accusations' are insufficient to satisfy the pleading requirements of Rule 23.1." *Livermore*, 2010 WL 3583999 at *3 (citing cases).

In an attempt to avoid dismissal of his amended complaint, plaintiff points to specific paragraphs in the new pleading that supposedly contain "a plethora of particularized facts" establishing demand futility. (*See* Plf. Resp. Br. at 13, *citing* Plf. Am. Compl. at 19- 35, ¶¶ 51, 56, 60, 61, 64, 67-70, 72, 80-85, 94). However, a close examination of those paragraphs reveals that

plaintiff merely realleges that: (1) the directors of Suiza and the former Dean Foods, *as a group*, conspired to bypass antitrust restrictions on the Dean Foods-Suiza merger and mislead the DOJ regarding their compliance with federal law; and (2) the directors of the new Dean Foods, *as a group*, caused the company to engage in further illegal anticompetitive practices after the merger. For example, one paragraph relied on by plaintiff states:

> Throughout the negotiations leading up to the Merger, *the Former Dean Foods and Suiza boards*, including defendants Engles, Green, Hardin, Muse, Nevares, Schenkel, Turner, Bernon, Collens, Hill, and Davis, intentionally agreed to take actions to make it appear as if the companies were making a good faith effort to satisfy the DOJ's antitrust concerns, when in reality the companies and their respective boards of directors were engaging in anti-competitive conduct. In fact, the structure and effectuation of the Merger actually led to further consolidation and less competition in the milk market. Since the Merger, *the Dean Foods Board* has continued to take actions and make agreements that skirt the restrictions imposed on the Company during its formation.

(*Id.* at 29-30, ¶ 80) (emphasis added). Almost all the other paragraphs cited by plaintiff attribute illegal conduct, and specific knowledge of illegal conduct, to the board as a group, then list the names of the individual defendants who served on the board. (*See id.* at 19-36, ¶¶ 51, 56, 60, 61, 67, 69, 72, 82, 83, 85, 94). Nearly identical formulaic allegations of board misconduct and director participation appear throughout the amended complaint. (*See id.* at 20-36, ¶¶ 53, 58, 74, 76, 88, 90, 97). However, nowhere in this pleading does plaintiff allege particularized facts from which the court can infer that any individual defendant *personally* acted without honesty or good faith.

"[T]he simple expedient of naming a majority of otherwise disinterested and well motivated directors as defendants and charging them with laxity or conspiracy [ ] will not itself satisfy the standards for permitting a shareholder to be excused from demand or to override a board decision not to litigate a corporate claim." *Gagliardi v. TriFoods International, Inc.*, 683 A.2d 1049, 1055

(Del. Ch. 1996) (citing cases). Similarly, plaintiff's allegations of knowledge and scienter on the part of the individual defendants, which are explained solely by virtue of their service on the board, (*see, e.g.* Plf. Am. Compl. at 20, ¶ 53 & 23-24, ¶¶ 61, 64), are insufficient to excuse demand. *Rattner v. Bidzos*, No. 19700, 2003 WL 22284323 at *11 (Del. Ch. Sept. 30, 2003); *see also Pedroli v. Bartek*, 564 F.Supp.2d 683, 695 (E.D. Tex. 2008) (allegations that directors "must have known" about illegal conduct held insufficient to excuse demand under Delaware law). Without particularized factual allegations that call into question the good faith and honesty of any individual director, plaintiff's amended complaint does not create a reasonable doubt as to whether the challenged transactions run afoul of the business judgment rule. *See Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008) (declining to infer from mere fact of board approval that each member of the board knew the alleged transactions were improper or that the board consciously and in bad faith failed to discharge fiduciary responsibilities with respect to those transactions).

Nor is any challenged transaction "so egregious on its face that board approval cannot meet the test of business judgment[.]" *Aronson*, 473 A.2d at 815. Thus far, Delaware courts applying *Aronson* have found that such circumstances exist only in cases involving allegations of stock option backdating. *See, e.g. Melzer v. CNET Networks, Inc.*, 934 A.2d 912, 915 (Del. Ch. 2007) (backdating options qualifies as one of those "rare cases" in which a transaction may be so egregious on its face that board approval cannot meet the test of business judgment); *Ryan v. Gifford*, 918 A.2d 341, 356 (Del. Ch. 2007) (same). Even under the facts alleged by plaintiff, the court cannot conclude that Dean Foods would never legitimately agree to merge with another public company, close bottling plants, or negotiate full supply agreements with some milk cooperatives and bottling companies but not others. These types of transactions are not presumptively illegal on their face. Indeed, plaintiff acknowledges that the Dean Foods-Suiza merger was approved by the DOJ, (*see*

Plf. Am. Compl. at 25, ¶ 67 & 37, ¶ 99), and that the Attorneys General of five Northeast states approved the closure of a bottling plant in Massachusetts, (*see id.* at 35, ¶ 95). This is not one of those "rare cases" where board approval of the challenged transactions cannot meet the business judgment test.

## CONCLUSION

Plaintiff has failed in his second attempt to plead particularized facts to establish that demand on the Dean Foods board of directors would be futile. Because plaintiff is not entitled to pursue his derivative claims against the individual defendants, he has no claim against the alleged co-conspirators, DFA, NDH, SMA, and DMS, for aiding and abetting. *Livermore*, 2010 WL 3583999 at *4 (citing cases); *see also Landy v. D'Alessandro*, 316 F.Supp.2d 49, 55 (D. Mass. 2004) ("Failure to comply with Rule 23.1 for a challenged action results in dismissal of all claims that rely on that challenged action."). Accordingly, defendants' Rule 12(b)(6) motion to dismiss [Doc. #93] is granted. The court will dismiss this action with prejudice by separate judgment filed today.

SO ORDERED.

DATED: January 26, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE